IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Daniel Roy Organ, | ) | No. CV-11-158-PHX-GMS (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Margaret Callaway, et al., | ) ) | |
| Respondents. | ) ) ) | |

Petitioner has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in the Arizona Superior Court, Maricopa County. (Doc. 4) Respondents have filed an Answer asserting that the Amended Petition should be dismissed, to which Petitioner has replied. (Docs. 13, 14) For the reasons set forth below, the Petition should be dismissed.

**I. Factual and Procedural Background**

On August 27, 2008, an information was filed in Maricopa Superior Court Case No. CR2008-110399, charging Petitioner with the following offenses: Count 1 - possession or use of narcotic drugs, a class 4 felony; Count 2 - possession of drug paraphernalia, a class 6 felony; and Count 3 - possession or use of dangerous drugs, a class 4 felony. (Respondents' Exh. A) The offenses were allegedly committed on December 18, 2007. (*Id.*) On August 27, 2008, Petitioner filed a Motion to Suppress Evidence Obtained from Officer's Unlawful Seizure of him in Motor Vehicle, and a Motion to Suppress Evidence Obtained as a Result of Officer's Warrantless Search of Vehicle. (Respondents' Exhs. B,

C)

On September 16, 2008, the State filed an allegation of historical prior felony convictions, an allegation of aggravating circumstances other than prior convictions, and an allegation of prior convictions pursuant to A.R.S. § 13-901.01. (Respondents' Exhs. D, E, F) On October 3, 2008, the State responded to Petitioner's motions to suppress. (Respondents' Exhs. G, H)

On December 1, 2008, the trial court[1] conducted a suppression hearing. (Respondents' Exhs. I, J) The evidence at the hearing was as follows. At approximately 1:30 a.m., on December 18, 2007, Officer Eric Lamb of the Arizona Department of Public Safety ("DPS") was patrolling on State Route 87, in an unmarked police vehicle. (Respondents' Exh. J at 5-6, 9) Near Mesa Drive, Officer Lamb noticed a vehicle stopped on the right shoulder of the northbound lanes of the highway, with its "four way flashers on . . . ." (*Id*. at 7) Officer Lamb continued southbound until he could safely U-turn through the median, and then "headed back north" to Petitioner's vehicle to perform a "welfare" check. (*Id*. at 7-8) Officer Lamb explained that DPS officers are "mandated to check on stranded motorists to insure their welfare, or if they're broken down to see if they need assistance with a tow company." (*Id.*) When Officer Lamb was about 300 feet from Petitioner's vehicle, he turned on his rear flashing lights, to warn approaching traffic that he was going to slow down and pull over to the side of the road. (*Id*. at 8) As Officer Lamb approached Petitioner's vehicle, he turned on the front deck lights because he was in an unmarked car and wanted to indicate that he was in a "police vehicle," and wasn't "some hooligan [who's] going to come over and steal [Petitioner's] car." (*Id*. at 8, 28) Officer Lamb testified that his only intent was to check on the welfare of the occupants of the vehicle, and to determine why the car was stopped on the side of the road. (*Id*. at 28)

When Officer Lamb was roughly 100 feet from Petitioner's car, he observed the car moving slowly along the shoulder of the highway. (*Id*. at 9) Officer Lamb turned on

---

[1] The Honorable Teresa Sanders presided.

the front deck lights as he pulled behind Petitioner's car, the car started moving away, traveled about 30 feet, and stopped. (*Id*. at 13)

Officer Lamb contacted the two occupants of the vehicle, identified himself as a Highway Patrol Officer, and asked if they were "okay." (*Id*. at 13, 30) Petitioner responded that he had pulled over because he was tired. (*Id*. at 13) Officer Lamb noted that Petitioner appeared nervous and distracted, and did not respond quickly to the Officer's questions. (*Id*. at 13-14) During his conversation with Petitioner, Officer Lamb, a "drug recognition expert," noticed that Petitioner was "speaking in almost a mumbling tone consistent with what [he] believe[d] was somebody that could be impaired through depressant drugs, or some type of narcotic drug, or something to that effect." (*Id*. at 14, 17) Officer Lamb again asked why Petitioner was stopped on the side of the road, and Petitioner reiterated that he was tired. (*Id*. at 14) Officer Lamb then had Petitioner exit the car and accompany him to the side of the road. (*Id*.)

Officer Lamb asked Petitioner his passenger's name. Petitioner responded that he did not know her name, but he had known her for a few days. (*Id*. at 17) At this point, Lamb felt the situation "changed from a welfare check to something else." (*Id*. at 17, 40) Lamb asked for consent to search the vehicle, but Petitioner declined. (*Id*. at 18) Officer Lamb then indicated that he would bring a canine to sniff around the vehicle. (*Id*. at 18) Petitioner said he "had no problem with that." (*Id*.)

Officer Lamb checked the status of Petitioner's drivers license, and found that it had been suspended. (*Id*.) Lamb advised Petitioner that it was a crime to drive on a suspended licence, that his car would be towed, and he was not "free to leave because [the officer] believed there was something else going on." (*Id*. at 19) Officer Lamb contacted his dispatcher and requested the assistance of another law enforcement officer, because he was the only DPS officer on duty in that area, and Petitioner's car need to be towed. (*Id*.)

Because Officer Lamb was having Petitioner's car towed, he completed an inventory search "for [the police agency's] liability, as well as for the person that's being

- 3 -

arrested, or [whose] vehicle [is] being towed." (*Id.*) During the inventory search, Officer Lamb found copper brillo padding on the floorboard, which he knew was commonly used for smoking crack cocaine. (*Id.* at 20) In the center console, he found a pipe, that was later confirmed to have crack cocaine inside. (*Id.*) Officer Lamb also found methamphetamine, and other cocaine base inside Petitioner's car. (*Id.* at 21)

While at the scene, Officer Lamb advised Petitioner of his *Miranda* rights. Petitioner initially denied any knowledge of the drugs inside his car. (*Id.*) However, Petitioner was later interviewed at the police station, and admitted to possessing and owning all of the items, except for one crack pipe located in a bag of the female passenger's clothing that was found in the trunk. (*Id.*)

Petitioner also testified at the hearing. (Respondents' Exh. J at 43) Petitioner stated that he had pulled to the side of the road because he was tired. (*Id.*) He noticed "flashing lights" behind him after he had turned his lights on, his "flashers" off, and was "about to get on the road." (*Id.* at 44) Petitioner testified that Officer Lamb never asked if he was "okay." (*Id.* at 47) Petitioner stated that the inventory of his vehicle's contents excluded several items including CDs, pens, and sunglasses. (*Id.* at 49-50)

After the testimony and argument, the court took the motions to suppress under advisement. On December 26, 2008, the court denied the motions to suppress. (Respondents' Exh. K) On January 13, 2009, Petitioner waived his right to a jury trial, and the parties submitted the matter to the trial court[2] "on the record." The court found Petitioner guilty of all three offenses charged in the information. (Respondents' Exh. L) The court found the offenses to be non-repetitive. (*Id.*)

On February 18, 2009, the court suspended the imposition of sentence and ordered Petitioner to serve concurrent two-year terms of probation on each count, and on Count 1 imposed a deferred jail term of six months. (Respondents' Exh. M) The court fined Petitioner $3,680 on Count 1, and $1,840 on Count 2. Finally, the court ordered Petitioner to

---

[2] The Honorable Paul J. McMurdie presided.

complete 360 hours of community service on both Counts 1 and 2. (*Id.*)

**B. Direct Appeal**

Petitioner filed a notice of appeal with the Arizona Court of Appeals. On July 13, 2009, Petitioner filed an opening brief raising the following claims:

> 1. Whether the trial court committed reversible error in denying Petitioner's motion to suppress where the initial stop was made in the course of the officer's "community caretaking" duties?
>
> 2. Whether the trial court committed reversible error in denying Petitioner's motion to suppress where the evidence was unlawfully seized because the search did not qualify as either a valid inventory search or a search incident to arrest?

(Doc. 4-2 at 15-16) After the matter was fully briefed, on June 17, 2010, the appellate court affirmed Petitioner's convictions and sentences. (Respondents' Exhs. N, P; doc. 4-2 at 43-48)

On July 16, 2010, Petitioner filed a petition for review in the Arizona Supreme Court. (Doc. 4-1 at 1-12) The Arizona Supreme Court summarily denied review on December 1, 2010. (Respondents' Exh. P; doc. 4-1 at 13)

**C. Federal Petition for Writ of Habeas Corpus**

On July 16, 2010, Petitioner, through counsel, filed a timely[3] Petition for Writ of Habeas Corpus. (Doc. 1) On February 10, 2011, the Court dismissed the petition for failure to name the proper respondents, and for failure to allege a constitutional violation in the petition. (Doc. 3) The Court granted Petitioner leave to file an amended petition within thirty days. (*Id.*) On February 28, 2011, Petitioner filed an Amended Petition for Writ of Habeas Corpus, asserting the following claims: Ground One - Petitioner was unlawfully seized in violation of the Fourth Amendment when Officer Lamb conducted a traffic stop solely to conduct a welfare check; and Ground Two - the warrantless search of Petitioner's vehicle following his arrest for driving on a suspended license violated the Fourth Amendment because it did not qualify as a valid inventory search. (Doc. 4)

---

[3] Respondents concede that the Petition is timely pursuant to 28 U.S.C. § 2244(d). (Doc. 13 at 8-9)

- 5 -

## II. Analysis

Respondents assert that because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court, this Court should deny his federal habeas petition. For the reasons set forth below, the Court agrees with Respondents' assertion.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also*, *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005). Fourth Amendment claims can be litigated in federal habeas corpus proceedings only where the petitioner demonstrates that the state did not provide an opportunity for full and fair litigation of his Fourth Amendment claims; it is immaterial whether the petitioner actually litigated the Fourth Amendment claims. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *Gordan v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990). The issue is whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claims, not whether the state courts correctly disposed of the Fourth Amendment claims or even whether the claims were correctly understood. *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994). In determining whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, a court should examine the extent to which the claim was considered by the state trial and appellate courts. *See*, *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981) (finding that a 45-page evidentiary hearing transcript, a four-page appellate opinion, and substantial briefs demonstrated careful consideration of appellant's Fourth Amendment claim).

The record of the state proceedings shows that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claims. Petitioner raised identical Fourth Amendment claims in two pre-trial motions to suppress, and the trial court held an evidentiary hearing on the issue. At the hearing, Petitioner and Officer Lamb testified. Petitioner also cross-examined the arresting officer. (Respondents' Exhs. B, C, J) After

1 | taking the matter under advisement, the trial court determined that Petitioner's Fourth
2 | Amendment rights had not been violated. Petitioner raised the same issues on direct
3 | appeal and the Court of Appeals affirmed in a six-page memorandum decision. (Doc. 4-2
4 | at 1-41, 43-48) The appellate court found "that the officer's action in stopping
5 | [Petitioner] was justified as a proper community caretaking function." (Doc. 4-2 at 46)
6 | The Court of Appeals further found that the evidence "support[ed] the trial court's impli-
7 | ed finding that pursuant to DPS policy, Officer Lamb conducted a good faith inventory
8 | search, that such search was reasonable and did not violate the Fourth Amendment."
9 | (Doc. 4-2 at 47) Petitioner also sought review of his Fourth Amendment claims in the
10 | Arizona Supreme Court, which was denied. (Doc. 4-1 at 1-13) Petitioner extensively
11 | briefed and argued his Fourth Amendment claims in all state proceedings, and those
12 | claims were rejected each time. Contrary to Petitioner's assertion, he had a full and fair
13 | opportunity to litigate his Fourth Amendment claims in state court and, as such, his
14 | claims are not subject to review in this habeas corpus proceeding. Although Petitioner
15 | did not prevail on his Fourth Amendment claims in the state courts, he has not
16 | demonstrated that the State denied him a full and fair opportunity to litigate his claims.
17 | Petitioner's Fourth Amendment claims should therefore be dismissed. *See*, *Stone*, 428
18 | U.S. at 494.

### III. Conclusion

Based on the foregoing, the undersigned recommends that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, doc. 4, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See*, *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

Dated this 11th day of October, 2011.

Lawrence O. Anderson
United States Magistrate Judge